UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JAMALE DOUGLAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 13-1517-JES-BGC |
| | ) |
| | ) |
| MAJOR HOBART, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### MERIT REVIEW OPINION

**JAMES E. SHADID, Chief U.S. District Judge:**

This cause is before the Court for a merit review, pursuant to 28 U.S.C. § 1915A, of Plaintiff Jamale Douglas' claims.

**I.
MERIT REVIEW UNDER 28 U.S.C. § 1915(A)**

Under 28 U.S.C. § 1915(e)(2) and § 1915A, the Court is required to carefully screen a complaint filed by a plaintiff who seeks to proceed *in forma pauperis*. The Court must dismiss a complaint, or a portion thereof, if the plaintiff has raised claims that are legally "frivolous or malicious," that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id*. The test for determining if an action is frivolous or without merit is whether the plaintiff can make a rational argument on the law or facts in support of the claim. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim for relief if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

1

In reviewing the complaint, the Court accepts the factual allegations as true and liberally construes them in plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Conclusory statements and labels are insufficient. Fed. R. Civ. P. 8; *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)(holding that, in order to determine if a complaint states a plausible claim, the court must take non-conclusory, non-speculative facts as true, draw all reasonable inferences in the pleader's favor, and isolate and ignore statements that simply rehash claim elements or offer only legal labels and conclusions). Instead, sufficient facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013)(internal quotation omitted).

## II.
## ANALYSIS

### A.    Douglas' factual allegations must be liberally construed.

Douglas has filed the instant suit asserting four causes of action against Defendants pursuant to 42 U.S.C. § 1983 and Illinois state law.[1] Douglas is an inmate within the Illinois Department of Corrections who is housed at the Pontiac Correctional Center in Pontiac, Illinois.

Douglas claims that on August 21, 2012, he was "rapping" and bagging on his cell door in order to keep rhythm for his rap. A few minutes later, Defendant Correctional Officer Newhall directed him to stop beating on the cell door. Douglas claims that he stopped hitting the cell door approximately 20 seconds after being directed to do so by Officer Newhall.

Nevertheless, Defendant Lt. Rosenberg instructed Douglas again to stop beating on his cell door. Shortly thereafter, Defendant Major Hobart arrived at Douglas' cell in a rage and ordered Douglas to turn on his cell's lights. When Douglas questioned the reason for Major

---

[1] Douglas has enumerated six causes of action, but two of them are redundant in that he alleges two causes of action for excessive force and two causes of action for battery that stem from the same nucleus of operative facts.

Hobart's anger and instructions, Major Hobart directed Douglas to come to the cell door so that he could handcuff Douglas and informed Douglas that, if Douglas did not comply, he would spray Douglas with mace to make him comply. Even though he was not resisting, Douglas claims that Major Hobart sprayed mace in his face and that the mace caused burning in his eyes and throat. Douglas also claims that he placed a sheet in front of his face to block the mace and that Major Hobart used Douglas' actions as a justification for spraying mace in his face a second time under the false pretense that Douglas was attempting to commit suicide by placing the sheet around his neck.

After the mace had taken effect, Major Blackard was able to handcuff Douglas and transported Douglas to the "bullpen" where Major Blackard further secured Douglas' handcuffs to a bolt attached to the wall. Despite Douglas being handcuffed, Major Blackard began screaming in Douglas' face. Douglas, in return, stood up from the bench upon which he had been sitting and began screaming at Major Blackard, and Major Blackard retaliated by pushing Douglas down to the bench upon which Douglas had been sitting.

Sometime thereafter, Defendant Alton Angus, a psychologist at the Pontiac Correctional Center, approached Douglas and asked Douglas what had happened. According to Douglas, Angus knew what had happened because Angus was present and had heard everything that had transpired. Angus then asked Douglas if he were suicidal, and Douglas responded: "No." Nevertheless, Angus—in concert with others—placed Douglas on suicide watch for two days in order to hide Major Hobart's excessive force.

After being informed that he was being placed on suicide watch, Douglas became angry. Thereafter, Defendants Major Blackard, Major Hobart, Lt. Rosenberg, Officer Moore, Officer Trainor, Officer Zimmerman, Officer Jesse, and Officer Lourent "rushed" Douglas. Major

Blackard yanked Douglas' wrists and hands above Douglas' head while he was still handcuffed, thereby causing pain and injury.

Meanwhile, the other identified officers slammed Douglas to the floor, yanked on his leg irons (causing bruising to his legs and ankles), and ripped off his clothes. When they were done assaulting Douglas, these Defendants dragged Douglas to his new cell on the suicide watch unit and slammed him on the cement bed located inside the cell. Finally, Defendants yanked Douglas' arms through the chuckhole to un-cuff his hands which caused pain and injury to his left hand and wrist.

The next day, Douglas complained to Defendants Tangman, Eilts, Eschelman, Moore, Smith, Newhall, and Trainor about his left hand hurting. Douglas claims that he showed these Defendants his left hand and that it was visibly swollen. Although he asked to go to the Health Care Unit to have his left hand examined, Douglas claims that no one took him to see a medical provider and that Defendants' failure to do so prolonged his pain and suffering.

**B.    Douglas' Complaint states a cause of action for excessive force and battery.**

The United States Supreme Court has set forth the standards by which this Court must evaluate a claim of excessive force under the Eighth Amendment. In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court re-emphasized its holding in *Hudson v. McMillan*, 503 U.S. 1 (1992), that the "'core judicial inquiry [] was not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith-effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7). The Supreme Court went on to say:

> "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman,

4

> inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9, 112 S. Ct. 995; see also *id.*, at 13-14, 112 S. Ct. 995 (Blackmun, J., concurring in judgment)("The Court today appropriately puts to rest a seriously misguided view that pain inflicted by an excessive use of force is actionable under the Eighth Amendment only when coupled with 'significant injury,' *e.g.,* injury that requires medical attention or leaves permanent marks").
>
> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. *Id*. at 7, 112 S. Ct. 995. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Ibid*. (quoting *Whitley*, 475 U.S. at 321, 106 S. Ct. 1078). The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson* not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9, 112 S. Ct. 995. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Ibid*. (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Ibid*. (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

*Id*. at 37-38.

In the instant case, Douglas has alleged that Defendant Hobart used mace to subdue him even though he was not disobeying an order or resisting in anyway. In addition, Douglas has alleged that, while he was handcuffed and in leg irons, Defendants Hobart, Blackard, Rosenberg, Moore, Trainor, Zimmerman, Jesse, and Lourent assaulted him, causing him to sustain physical injuries and pain. Based upon the allegations and the others in his Complaint, the Court finds that Douglas' Complaint states a cause of action upon which relief can be granted for excessive force in violation of his constitutional rights.

5

The Court also finds that Douglas has stated a claim for battery under Illinois law. Under Illinois law, battery is committed by an individual if: "'(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.'" *Bakes v. St. Alexius Medical Center,* 955 N.E.2d 78, 85, 352 Ill.Dec. 902, 909 (Ill. App. Ct. 2011)(*quoting* Restatement (Second) of Torts § 13 (1965)). Illinois courts have stated that battery may be defined as the willful touching of the person of another or a successful attempt to commit violence on the person of another. *Id*. Illinois courts have also defined battery as involving a defendant performing some affirmative act intended to cause an unpermitted contact. *Id.* "[T]he gist of the action for battery is not the hostile intent of the defendant, but rather the absence of consent to the contact on the part of the plaintiff." *Country Mutual Insurance Co. v. Olsak,* 391 Ill.App.3d 295, 306, 908 N.E.2d 1091, 330 Ill.Dec. 433 (Ill. App. Ct. 2009)(internal quotation omitted).

Here, Douglas has alleged that Major Hobart sprayed him with mace without provocation and without his consent and that Major Blackard shoved him down onto a bench while he was shackled.[2] These allegations are sufficient to state a claim upon which relief can be granted, and therefore, the Court will allow Douglas' battery claim to proceed against Major Hobart and Major Blackard.

    **C.**    **Douglas' Complaint fails to state a claim for deliberate indifference and conspiracy.**

Conversely, Douglas' Complaint fails to state a claim upon which relief can be granted for deliberate indifference and for conspiracy. As for his deliberate indifference claim, Douglas must show "(1) that his condition was 'objectively, sufficiently serious' and (2) that the 'prison

---

[2] Douglas' Complaint limits his battery claims to Major Hobart and Major Blackard.

officials acted with a sufficiently culpable state of mind." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008)(quoting *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005)); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)(same). "With respect to the culpable state of mind, negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense." *Id.*; *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994)("We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.").

Douglas claims that he asked Defendants Eilts, Eschelman, Moore, Smith, Newhall, Trainor, and Tangman to take him to the Health Care Unit to receive medical attention for his hand. Even assuming that his swollen had constituted a serious medical condition sufficient to implicate the Eighth Amendment, Douglas has failed to allege properly that these Defendants acted with a sufficient culpable state of mind to constitute deliberate indifference to a serious medical condition. Douglas claims that no one would take him to the infirmary on August 22, 2012, but the medical records that Douglas has attached to his Complaint show that he had an X-ray performed on his left hand and wrist on the next day (August 23, 2012) and that a doctor read those test results on August 24, 2012. Waiting one day to see a doctor does not constitute deliberate indifference. *E.g.*, *Thomas v. Walton*, 461 F. Supp. 2d 786, 793-94 (S.D. Ill. 2006) (holding that a one day delay in providing a prisoner with psychiatric care following a suicide attempt by the prisoner did not rise to the level of deliberate indifference to the prisoner's serious medical needs). By attaching these medical records to his Complaint, Douglas has pleaded himself out of court on his deliberate indifference claim. *Massey v. Merrill Lynch & Co., Inc.*,

7

464 F.3d 642, 645 (7th Cir. 2006)(noting that, when documents attached to a complaint contradict the complaint's allegations, the attachments trump the allegations.); Fed. R. Civ. Pro. 10(c); *McCready v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007)(even a pro se plaintiff may plead himself out of court).

As for his conspiracy claim, Douglas has failed to allege all of the elements necessary to establish this claim. "To establish Section 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998)(internal quotation and citations omitted); *Miller v. Fisher*, 2007 WL 755187, * 3 (7th Cir. Mar. 12, 2007)(holding that in order to state a cause of action for conspiracy under § 1983, a plaintiff must "identify the parties, purpose, and approximate date of the conspiracy.").

Douglas does not allege that Angus was a private individual. In fact, Douglas alleges that he was the psychologist at the Pontiac Correctional Center. Thus, he was, presumably, a state employee. Even assuming that Angus is a private individual for purposes of establishing a conspiracy under § 1983, Douglas has failed to allege that Angus and Major Hobart reached an understanding to deny Douglas his rights. *Cline v. Broward County Sheriff's Office*, 2007 WL 106566, * 6 (S.D. Fla. Jan. 9, 2007). Douglas' Complaint merely alleges that a conspiracy occurred; he does not allege that Angus and Major Hobart reached an understanding, nor does he explain the nature of the conspiracy other than in general, conclusory terms. *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984)("In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed.").

And, even if Douglas had satisfied those pleading requirements, merely being placed on suicide watch for two days does not constitute a constitutional deprivation. *Landry v. North Carolina*, 2011 WL 3683231, * 7 (W.D.N.C. Mar. 11, 2011)("The Mecklenburg Defendants also argue that the conspiracy claim fails because there is no underlying constitutional misconduct— neither being placed on suicide watch nor an alleged gate keeping order limiting access to the courthouse—violated Plaintiff's constitutional rights.  The undersigned agrees.")(internal citation omitted).  Accordingly, the Court dismisses Douglas' conspiracy claim for failure to state a cause of action upon which relief can be granted.

### D. Douglas' motion for appointment of counsel is denied.

Finally, Douglas' motion for appointment of counsel [D/E 4] is DENIED.  Initially, the Court notes that it does not possess the authority to require an attorney to accept pro bono appointments on civil cases such as this. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007).  The most that the Court can do is to ask for volunteer counsel. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992)(holding that it is a "fundamental premise that indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court.").

In determining whether the Court should attempt to find an attorney to voluntarily take a case, "the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself . . . . The question is whether the plaintiff appears competent to *litigate* his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655 (emphasis in original).  In other words, this inquiry is an individualized one based upon the record as a whole, the nature of the claims, and the plaintiff's ability to pursue his

claims through all phases of the case, including discovery and trial. *Navejar v. Iyioloa*, 718 F.3d 692, 696 (7th Cir. 2013).

Here, Douglas has filed a Complaint that has survived a merit review by this Court. Moreover, Douglas' claims are not so novel or complex that he cannot litigate it himself. Douglas has personal knowledge of the facts supporting his claims and appears capable of cross-examining Defendants regarding their version of the events. *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006).  The test for appointment of counsel is not whether a lawyer could more effectively handle the case. *Pruitt*, 503 F.3d at 655.  The test is whether the litigant is competent to litigate his own claims. *Id.*  Douglas appears competent to litigate this case himself, and, therefore, the Court denies his motion for appointment of counsel.

**IT IS, THEREFORE, ORDERED that:**

1.  Plaintiff Jamale Douglas' motion for appointment of counsel [D/E 4] is DENIED.

2.  Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff states a claim under the Eighth Amendment against Defendants Major Hobart, Major Blackard, Lt. Rosenberg, Officer Moore, Officer Trainor, Officer Zimmerman, Officer Jesse, and Officer Lourent for excessive force and also states a claim against Defendants Major Hobart and Major Blackard for battery under Illinois law.  This case proceeds solely on the claims identified in this paragraph.  Any additional claim(s) shall not be included in the case except at the Court's discretion on a motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2.  The Court finds that Plaintiff's Complaint fails to state a claim upon which relief can be granted for deliberate indifference to a serious medical need and civil conspiracy.

Accordingly, those claims and Defendants Angus, Tangman, Eilts, Eschelman, Smith, and Newhall (identified on the Court's docket as Newman) are hereby dismissed.

    3.    This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

    4.    The Court will attempt service on Defendants by mailing them a waiver of service. Defendants have 60 days from service to file an Answer. If Defendants have not filed an Answer or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

    5.    If a Defendant no longer works at the address provided by Plaintiff, the entity for whom Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

    6.    Defendants shall file an answer within 60 days of the date the waiver is sent by the clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The

Court does not rule on the merits of those positions unless and until a motion is filed by Defendants.  Therefore, no response to the answer is necessary or will be considered.

7. Once counsel has appeared for Defendants, Plaintiff need not send copies of his filings to Defendants or to Defendants' counsel.  Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel.  The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3.  If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

8. Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement.  Counsel for Defendants shall arrange the time for the deposition.

9. Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number.  Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**: **1) DISMISS PLAINTIFF'S CLAIMS FOR DELIBERATE INDIFFERENCE AND CIVIL CONSPIRACY; 2) DISMISS DEFENDANTS ANGUS, TANGMAN, EILTS, ESCHELMAN, SMITH, AND NEWHALL (IDENTIFIED ON THE COURT'S DOCKET AS NEWMAN) AS PARTY DEFENDANTS;** 3) **SHOW PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL [D/E 4] AS DENIED;** 4) **ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES; AND 5) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES.**

**LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARHSAL'S SERVICE ON THAT DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).**

Entered this 19th day of December 2013.

      /s James E. Shadid
JAMES E. SHADID
CHIEF UNITED STATES DISTRICT JUDGE